Good morning, Your Honors. May it please the Court, Jonathan Selbin on behalf of Plaintiff Appellants. I'd like to reserve five minutes, and I understand I have to keep track of that myself. All right. Thank you. We are here today because under Rule 23, the Court had an obligation to conduct a rigorous analysis of the evidence, and yet it literally ignored the single most important piece of evidence in the entire record on the single factor on which it denied class certification, which was commonality. And under this Court's holding in the Wolin case, commonality is already a very low threshold, easily satisfied. And here we satisfied it in spades, in particular with the document that Honda did not produce in the litigation until our third go-round on class certification. The history there shows that the Court had dramatically limited our discovery to a handful of issues. After twice denying... So I'm looking at the famous Supreme Court case in Dukes where the Court says the common contention must be of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke, close quote. So what is the common contention that you say fits that Supreme Court definition? The common contention is the same common contention as in Wolin and the other cases, and it has to do with this one common defect. And that one common defect is the same defect that our expert found. It's the same defect that Honda's own engineers found in 2009 in this document we didn't get until very late in the case. And if I could walk the Court, it will take just a moment. That document is at ER 86. Is that the Honda element document? It is. And I'm going to address why it's not just a Honda element document, because it's set forth on the face of the document. If you look at ER 86, this is where the common defect page, it talks about the SCV model. The SCV model is the element. Counsel, just so procedurally, we're on the same place. The Honda element document, was it before the District Court when the District Court made the determination? It was. Could I finish my question? I'm sorry, yes. Was that document before the District Court when it made its determination regarding class certification? It was, Your Honor. It was produced to us after we filed our third motion for class We put it in on reply, and it was addressed on the Daubert briefing. And that's in the record. If you look where we cited it below, it's at Docs 334.1 and 334.2. Where are the excerpts of record? Those excerpts of record are 86, the document itself is 86.93 and 132. 93 and 132 would be where it was presented to the District Court? No, that's the document itself. The actual briefing below is not in the excerpts of record. You have to get it from them. That's what I was asking you, because when I was reviewing the record, I did not see that this document was presented to the District Court before the District Court made its class certification order. That's why I asked you that question. So are you saying that we have to go to the District Court record as opposed to the excerpts of record to find where this was submitted to the District Court? What are you saying? Yes, is the simple answer. Okay. It's in the Doc. It's Doc at 334.1 at 5 to 7. 334-1? Yes, ma'am. Okay. At 5 to 7. Okay. And 334-2. Okay. At 7 to 8. At 7. Is there any reason these documents were not placed into the excerpts of record? I have no explanation. Okay. I apologize that they were not. They should have been. The actual documents themselves, the ER 8693 and 132 are there. But where we cited them, we should have put them in, and I apologize. Because procedurally, if the District Court didn't have this before it when it made the decision, then it couldn't be error for the District Court to consider it. I would agree. I don't think there's any dispute that the District Court had them before them and both sides addressed them. Okay. But if I could go back to the document for a minute, because it answers your question, Judge Rakel. All right. So we start with the element, which is the SCV. And we find out why, under the description, what the question is. This is a Honda internal engineering analysis that only gets triggered after a certain number of failures. So they thought it was important enough to conduct this analysis. And this first page is the end result of the analysis. This is their end result document. And it tells us that the regulator plate is failing at the upper cable location. And it goes on to describe the defect where they tested the plastic and they tested the metal. And then they go on to propose a common solution to the problem in the third paragraph under description. So they say, why are we doing this? We're having problems with this thing failing at higher than expected rates. What's the defect? They define it. And I'm going to come back to that in a second, because there's another page that does that in more detail. And then they propose a common solution. If you turn over. I'm sorry, I was with you until, where are you saying, where's the common solution? I'm sorry, the third paragraph of the description? Since the details of the carrier plate is on the supplier drawing, they have determined a change to the subcompact. Subcomponent. Subcomponent drawing. Sorry, this is a real test. It's needed to countermeasure the concern. That's correct. That's correct. So that's where they say, here's the solution for this problem. Now, it looks for a minute like you're talking just about the element. But if you drop back to page ER 132, which should be the last page in that collection, there's a page entitled Summary. And it says, DB3, which is the Honda Design Group, proposes to issue the CMDWG, which is the countermeasure drawing we just talked about, the solution, of SCV, there's your element, S9A, S9V. S9V is the pilot. That's our VO. So the countermeasures. So was there a stipulation that this summary applied to all of these? I mean, the S9V was the pilot and that this applied to it? Well, there's no dispute that the S9V is the pilot. Whether or not they agree that this solution was rolled out for all of these vehicles, I think there may be some dispute. This is very cryptic language to me. It is. It is. It is. And if you go to the chart. So how do we know that this cryptic language is the admission from Honda that you are positing to us? Right. And the answer, I think, is that there wasn't a dispute that this was actually rolled out. I don't think there's any dispute in the record anywhere that they rolled out the same solution for the element, the pilot and the accord. That's a different question. If you're relying on this document as an admission of a common defect, this document needs to say that. And I don't read this language as saying that without some kind of explanation or someone who can interpret this language as saying that. Fair, Your Honor. Again, I don't think there's any dispute that they rolled it out for. But I will also tell you that our expert. I have a question. I understand. Whether or not they rolled it out is not the point. The point is you said this is an admission by Honda that there's a common defect and that it extends not only to the element but to the pilot. Right. That's saying a lot from that one line. It is, Your Honor. It is also explained by our expert, Dr. Ackervain, in a part of his testimony that wasn't addressed by their Daubert motion where he explained what these documents meant. So I'm not meaning to be glib about this, but there was no dispute in the record, and I'd be surprised if my friend disputes it, that the S9V is the pilot and that this countermeasure was rolled out not just for the element but for the pilot because it's the same part. But that's not an admission that there was a defect. No, it's not an admission that it's a defect. No, I'm sorry. I wasn't suggesting that the fact that they put the same countermeasure. My answer to that is car companies don't fix things that ain't broke. They're fixing the element. That's not necessarily true because car companies sometimes like to give more luxury or more convenience. It doesn't necessarily mean it's a defect. Right. And that's the critical point here is that the evidence that there was a defect was in the district court, I mean in the district court's opinion or decision, there was no common defect, Sean. But you wouldn't know that because he never looked at this document in any way. He never mentions it. He goes through and knocks out our entire expert who, by the way, reached the exact same conclusion, using the same terms, creep and fatigue at the same points, identified the same defect as the Honda engineers did back in 2009. This was all before the district court. Four sentences on class certification, no commonality, no mention of this document. Counsel, if the district court looked at this one sentence that you're relying on at ER 132, are you saying if the district court looked at that one sentence, the district court would have been compelled to find a common defect? We didn't just brief this one sentence, Your Honor. The underlying briefing, we explained all of this in context with expert testimony, and there was not a dispute. And I'm not meaning to be argumentative with Your Honor, but the question of whether this applied to the element was not a question. So is your argument that this ER 132 combined with your expert was enough, or you're saying this alone was enough? I think this document alone is enough to establish commonality. If you look at Wolin, it's more than they had in Wolin. In Wolin, you had a single expert who had looked at the named plaintiff's vehicle only, and the court said commonality easily satisfied here. We're not even talking about predominance. We're talking about commonality easily satisfied. Here, our expert did far more than that, but we don't need our expert. Can I ask you a little bit about your expert? Sure. So, first of all, it appears he used a very small sample and extrapolated quite largely from that small sample. Second, unless I missed it, even though he changed the range of frequencies of vibration, he nowhere says that that caused a defect. He just says they should have done that, but he doesn't say it caused a defect. And the ‑‑ well, let me just stop there without going on. What about those points? Sure. And I see I only have three minutes, so I'm going to try to answer you quickly, Your Honor, because I do want to reserve a little bit of time. On the small sample size, he wasn't conducting a statistical sample to try to extrapolate failure rates. He was trying to determine why does this fail. And so he did what a scientist does, and he did actually more than what Honda did internally when they did it. He went out and looked at a couple of dozen of these things. Some were the named plaintiffs, as was done all that was done in Wolin. Some were he went to random junkyards and found vehicles that had intact doors and looked at them. If that's not, for lack of a better word, a BS detector, I don't know what is. He went and looked at ones that were randomly selected. All had the same failure mechanism. So he wasn't trying to opine as to what's the failure rate. He wasn't making an extrapolation. He was asking a more fundamental scientific question. Why is this happening? The answer why it's happening is that you have a particularly weak interface between the cable and the plastic. And at the normal vibrations, and this is where the vibrational testing comes in, at the normal range of vibrations that Honda pilots undergo, those frequencies aren't dampened. And it causes this failure over repetitive use through creep and fatigue. And that's exactly, if you look at page ER 93, it's exactly what they found as to the same part in the element. So that answers that question. Is there any indication at all in the record that Mr. Alkaven, is it Alkaven? Yeah. Attempted to rule out other potential causes of the regulator failures. No one ever offered any other potential causes. So in his own testing, he looked at it. He saw a failure mechanism. He came up with a hypothesis. He sent it to an electron microscopy lab where they said, yep, that's what's happening. He went out and did road testing. Yep, that's what's happening. Honda did a test vehicle as part of the litigation. It was happening on every one of them on the Honda test vehicle. Honda never put forward, they speculate about other causes. They never came forward with a single alternative explanation for failures. Counsel, did the Wallin case grapple with the Dukes holding? I believe Wallin is pre-Dukes. No, it was shortly after, I think. I think Dukes came out in April and Wallin came out in August of the same year. But it didn't grapple with Dukes at all. It doesn't seem to. But I can tell Your Honor that there are subsequent cases, including the Edwards case, which I recognize is a non-published case that reaches the same thing. I don't see how you can uphold respectfully what this district court did here, consistent with Wallin. I think you have to overrule Wallin to get there. You can if Wallin didn't grapple with Dukes. And that's the pertinent precedent that we have to grapple with. I'll give you two minutes for rebuttal. Okay, thank you, Your Honor. I appreciate it. Thank you. Good morning, Your Honors. May it please the Court, Michael Mallow on behalf of American Honda. Your Honors, I think when looking at this case, we have to look at what plaintiffs are asking for in this case. What they are asking for is for Honda to be responsible for any window regulator that has had to been replaced up until today, and they're asking for an extended warranty for future replacements caused by their defect theory. Fundamental to the plaintiff's theory in this case is the fact that the window regulator assemblies do not last long enough. It is baked into their defect theory because even Mr. Ockervane concludes that when the window regulator assemblies are first installed in the cars, they're more than strong enough to hold the windows. So over time, they fail. So basically, plaintiff's theory is that these window regulator assemblies fail due to old age. The problem that Mr. Ockervane had that Judge Wilson pointed out, and the problem that the plaintiffs have with the element documents, which we can go into in a moment but do not establish any defect theory in any vehicle other than potentially the element, is that the plaintiffs never define how long is long enough. How long do these window regulator assemblies have to work without repair? And without that answer, which you can apply to each and every window regulator assembly, without the answer of how long is long enough, you have no common defect theory and you have no ability to assess whether a failure is a failure or is not. Go ahead. I just wanted to ask you about Wolin. Sure. And it seems on point. What's your best argument to distinguish Wolin? Well, Wolin actually is on point. If you look at the fact that there were actually two types of relief that was sought in Wolin. One was related to the defect in the vehicle geometry that caused or alleged to cause premature tire wear. The second, and what injury is caused by that? And in Wolin and Edwards and what have you, the injury is a devaluation of the vehicle. The portion of Wolin where certification was allowed was for the injury of devaluation, which the plaintiffs in that case alleged was common across all customers. What Wolin did not allow for certification and said individual issues predominate is the same type of relief that's sought in this case, which was repair and replacement of tires that in fact prematurely wore. And as to that remedy, Wolin was very clear. Individual issues as it relates to causation will predominate. And the plaintiffs in this case want Honda to reimburse customers who had to replace a window regulator assembly that failed as a result of their defect. That's the same as the- But the reasoning, I'm just struggling because the reasoning as to why commonality was satisfied in Wolin seems to apply to the Grudensky proposed class. All the class members here have the same make and model vehicle with the same alleged defect, covered by the same warranty. And all of their claims raise the question of whether pilot regulators are defective, whether Honda was aware of the defect, whether Honda concealed the defect, and whether Honda's conduct violated the CLR or UCL. So I'm trying to find some light between the two, and I'm having a little trouble. I understand. And in order to answer the question, you have to look at the defect. In Wolin, the defect, the allegation was there was a defect in the geometric alignment, the frame of the vehicle. Because what you are arguing right now goes to predominance, and we're talking about commonality. I understand. So you need to- If you look at the defect, the defect is defined as there's a misalignment in the vehicle geometry. From day one, that geometry is misaligned. If you do an analysis, it's misaligned. And then it causes things to happen. Let's look at the defect in this case. What's the defect in this case? The window regulator assembly doesn't last long enough. Counsel said- Or it's defective. Hmm? I mean, it doesn't last long enough, or it's defective. What's the difference between doesn't last long enough and defective? Well, that's the problem in this case. The plaintiff's argument is the carriage plates are defective because they don't last long enough. And because they don't last long enough, they are defective. So the distinction you're making is that in Wolin, the defect existed from day one. And was manifest from day one. Whether it caused a problem in day one is a different issue. And Wolin said, hey, we're not going to define the defect by whether it has or has not caused the problem. Plaintiffs are asserting that all tires will eventually wear prematurely as a result of the geometry defect. But the question is, is it defective on day one can be answered. And whether it causes something else- The record here, in your view, supports only the conclusion that the regulator was fine. It's just like all things on this earth wore out after a while. According to plaintiffs, getting old is a defect. Now, their expert, of course, did say- Well, I'll be second. Your expert, their expert, rather, says it should last forever. He may be totally wrong, but that's what he said. He did say that. And it's interesting because Judge Wilson said that opinion is not based on anything. And plaintiffs do not argue that Daubert should not apply to class certification. And they do not argue that Judge Wilson was wrong to even consider the expert opinion against Daubert. And what Judge Wilson found was the opinion that the window regulator assemblies need to last forever, or at least the life of a vehicle. And if the vehicle continues on for 40 years, then the window regulator assembly needs to continue on for 40 years. It wasn't based on any industry standard. It wasn't based on any comparative testing. It wasn't based on any peer-reviewed literature. All of the elements that you would go through to determine whether an expert opinion is reliable under Daubert, all of it was absent for the opinion that the window regulator assemblies should last essentially indefinitely. But an interesting- I'm sorry, go ahead. But the plaintiffs are saying that the regulators are defective, not that they should last forever. But the defect is. That's what's circular about their argument. Because of the design. They're saying that because of the design, the regulators are defective and are designed effectively, not that they need to last forever. And it seems like that's also what Mr. Alkaven was saying. And I'm trying to figure out, did you- your briefs don't argue that Mr. Alkaven is unqualified in the field of product engineering and forensics. This is not a he's unqualified. Okay. The argument was that he had no basis. Well, you're saying his opinions are unreliable because he didn't analyze, I think you said, a sufficient sample size. Is that- That was part of it as well. But I'm trying to figure out, why would he need to analyze a statistically significant sample in order to opine on the general design or the product? It seems like every regulator has the same design. Or do you dispute that? The window regulator assemblies in the pilot, for the purposes of our discussion, the window regulators in the pilot have essentially the same design. However, that design is different than the design in the element, which is something I do want to touch on. But let me just ask you, I mean, why- it seems like Mr. Alkaven could offer an opinion about the design of the regulators by observing and testing even just one regulator. And he did offer an opinion. What he said was when they are new and the window regulator assemblies are more, and this is a quote, are more than strong enough to support the window. He did not say that the material used for the carrier plate was improper material. He did not say, as counsel suggested, that the interface is particularly weak. He did not say that the design itself is defective insofar as what he is saying is that it just doesn't last long enough. That's the essence of his opinion. It should, in his opinion, last indefinitely. Well, that wasn't even in his report. I think that was based on a question at deposition where that response was elicited. His document, his report doesn't really say that. Well, and let me read you just quickly the plaintiffs, the actual articulated defect theory that the plaintiffs have moved forward on. And this is- Okay, but I was asking about Alkaven's report because- But this answers the question Your Honor just asked. It's their defect. The alleged defect is that the regulators are not strong or durable enough to withstand the dynamic and vibrational forces, which millions of vibrations equivalent to raising and lowering the window tens of times per second that occur when the vehicle is driven under ordinary use. Not strong or durable enough. That's what they say is the defect. But to understand what strong and durable enough is, somebody's got to articulate what strong and durable enough is so that you know that these are not. So the notion that time is baked into that theory, it has to be baked into that theory. Because he's not saying, unlike Wolin, the geometry of the frame is defective and causes the premature tire wear. This is the window regulators are not strong and durable enough, and we know that because they fail. Okay? Why is that- Why is it failing at 300,000 miles a problem? Why is failing at 132,000 miles a problem? There's no time definition other than the notion that they're supposed to last forever. Counsel, you're running out of time. And I wanted to talk with you about the document that plaintiff's counsel relied on as saying the district court did not consider the single most important piece of evidence of commonality, ER-86 and ER-132. So could you discuss that, please? I sure can. The Honda Element document. If I can refer the court to ER-123. I'm sorry, 120- 123. And that's the document that says investigation result on top. Was that sealed? Was that document sealed in the district court record? Because some of the documents that opposing counsel referred to are sealed documents. So I just want to make sure that you all aren't breaking the seal here inadvertently. I'm hoping I'm not inadvertently, but it's pictures. I don't think it's all that. This particular page is all that detailed. But I think this page answers all of your honors questions. And what this page depicts is the accord, the MDX, the pilot, and the element. And it's talking about good, quote, warranty levels versus not good warranty levels. And it's showing the design of the window regulator assemblies vis-a-vis the windows in each one of the pictures. What does why SCV only, what does that mean? It means why SCV is the pilot. And it's why is the pilot having a problem? I'm sorry, SCV is the element, not the pilot. SCV is the element. And it's basically saying why is the element having failures when the other vehicles are not? So in other words, it's juxtaposing, it's not saying that the other vehicles have a design or a defect. It's juxtaposing the element against those and asking why is the element having a problem and the other vehicles are not. Well, opposing counsel says on ER 132 there is no dispute that the summary refers to all of the models, including the pilots. What's your response to that? So let me address that. As you can see from ER 123, the problem with the element was that there was a design difference between the element and the other three vehicles. And the remedy, the fix to deal with the element's problem was essentially to beef up the carrier plate for the element. So in order for the element to work as Honda wanted to, they beefed up the carrier plate. Why does 132 refer to other models? They're juxtaposing the other models. They're showing the difference between the element and the other models, including the pilots. What does that sentence mean? DB3 proposes to issue the C slash MDWG of SCV comma S9A comma S9V and SOX with updated SPEC. What does that mean? It means basically that the carrier plate, the beefed up carrier plate that's going to be used to address the element. Why do you need it to beef up? Instead of having two different replacement parts now, they're just commonizing the carrier plate for the other vehicles as well. So they would have to, to pursue plaintiff's theory, essentially Honda would have to say, even though this carrier plate can work in these other vehicles, we're going to have, and if we replace one, we'll have essentially production control and it's more economically efficient. We should not stick them in the other ones because then that suggests there's a defect in the other vehicles, but that's not the case. So the element is not, you don't think it's defective? Well, whether it's defective or not. I'm just curious, would you say it's defective? There's no indication that's defective. There were failures and Honda was addressing those failures. It doesn't mean, just because something fails doesn't mean it's defective. They made it better. Can I go back to ER 86? Yes, Your Honor. So the description there says, the regulator carrier plate is failing at the upper cable location at a rate of 0.26%. The failure rate in hot and dry climates is significantly higher and is 6.9%. I'm sorry, 6.9% for the model in Arizona. Cost of these claims is more than $113,000 to date. Warranty cost is approximately $17,000 model year for this concern. It's that last sentence I wanted to ask you about. Doesn't that suggest that there are failures within the warranty period? So we don't have to speculate whether this is some ancient vehicle. There at least are, according to this document, reported failures within the warranty period, which I believe is three years, yes? Correct. So don't we have here an admission by Honda that there is a problem with the regulators and that this problem is at least in some cases manifesting itself as early as the first three years? The documents can be read to suggest that the element has experienced failures within the warranty period and for the element, the cause is the design, the angle between the window and the window regulator. As to the other vehicles, yes, there were failures. So you're saying, again, that your real point about this is not that it doesn't show arguably defects, et cetera, and time period for the element. It's just not the Honda. It's just not the pilot. It's not plaintiff's defect theory as to the pilot. This document says nothing about the defect theory as it relates to the pilot. Do you agree with opposing counsel that the district court never considered ER 86? The opinion does not, the district court's order does not address whether the court did or did not consider the document. Both sides presented the document. Honda's position was this document is entirely irrelevant to plaintiff's common defect theory, and on the face of the document, it suggests just that. Thank you, counsel. Are there any other questions? All right, rebuttal. Thank you, Your Honor. I'll try to be very quick. I wanted to get back to you on your question about what else we put in the record around that document. And again, it's from the docket below, 334-1 at 6 to 7. Is that a sealed document? I believe it is, but I believe the court has access to that. But we can file it as a supplemental excerpt of record if you would like us to, if that would be helpful without argument attached to it. I'm not sure that's wrong. Maybe there's no defect in the Honda Pilot, but my friend just acknowledged that it's the same design of the carrier and the plate across all the pilots. So either all the pilots have a defective carrier plate or none do. Yeah, but this is about the element. This is about the element which has the same design except for an angle, right, except for the angle in which that's hung in the window. That's the difference he's pointing to. So we lose on the merits if he's right. If he's right that the cause of the problem is the angle, it's not the design of the carrier plate, we lose for everybody, up or down. Under Dukes, you think this is enough to show commonality under Dukes? I do. The Honda element document is sufficient under Dukes to show commonality for the pilot? I do, because it's literally the same design except for the way the angle, and they can argue that to the jury. They can say no, no, no, the element had a defect. The element had an angle that was different. But here's the other piece. If this is the proof of commonality and it doesn't, his position is he's contrasting the element to the pilot. But he conceded that all of the pilots in the class, in the five-year class, have an identical window regulator. That's your common design. Our theory is the common defect is exactly what Honda found and what we found, and is set forth in our expert, but also in their own document. And they had failures, they didn't just have failures of the element. They hit their internal triggers on the pilot as well. They had 1,300 just from our class, 1,300 failures within warranty. They had more than 99,000 nationwide, not just California. But the claims rates are projected by the various experts below anywhere from 13 to 71%. So they weren't just having failures with respect to the element. Now, we lose. If they're right that the defect isn't the materials and the way they're constructed and the vibrations, it's something about the angle, we'll lose. But everyone loses. Every member of that California class should lose that case if they're right. But if we're right, every single one of them wins. And that's the commonality of the design and the commonality of the defect. And I just want to point to one other case, the Doyle case, which is the Chrysler window regulator case, which this court reversed class certification on because of a damages problem that we solved, that we don't have. So they upheld certification on every other ground on very similar, in fact, less evidence. Upheld certification and said, you've got a damage model problem because you haven't attributed failures in useful life. It was a premium, price premium case. So your opposing counsel made a point when he was at the podium saying that you haven't proved a design defect or established enough for a design defect, only that it doesn't last long enough. Can you respond to that? Sure. This case isn't about how long it lasts or not. Your Honor was exactly right with your questions. It's about whether there was a defect at the time it was sold, which is no different than the defect at issue in Wolin. And tires are a consumable. You expect to replace your tires over time. Our case is stronger. Nobody expects to have to replace their window regulators in the life of a car. I never have. I've never known anybody who has. I've replaced the window regulator before. I hope it wasn't a Honda. It was not a Honda. Cutler Supreme. Okay. Very good. I hope you got good use out of it. If there are no further questions, thank you.
judges: Rawlinson, Murguia, Rakoff